M/P

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
08 APR -7 AM 11:06

'08 MJ 1064

DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**Ricardo PALMER (D1)**<br>**Janeen OCHOA (D2)**<br>**Annabelle MORAIRA (D3)**<br>Defendants. | Magistrate Case No.________<br>COMPLAINT FOR VIOLATION OF<br>Title 8, U.S.C., Section 1324(a)(2)(B)(iii)- Bringing in Illegal Aliens Without Presentation |

The undersigned complainant being duly sworn states:

On or about **April 4, 2008**, within the Southern District of California, defendants **Ricardo PALMER (D1), Janeen OCHOA (D2)** and **Annabelle MORAIRA (D3)**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that an alien, namely, **Ana VEGA-Juarez**, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said alien, and upon arrival did not bring and present said alien immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Sara Esparagoza, United States Customs and Border Protection Enforcement Officer

Sworn to before me and subscribed in my presence, this 7th day of **April, 2008**.

UNITED STATES MAGISTRATE JUDGE

M/P

The complainant states that **Ana VEGA-Juarez** is a citizen of a country other than the United States; that said alien has admitted he is deportable; that his testimony is material; that it is impracticable to secure his attendance at trial by subpoena; and that he is a material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On April 4, 2008, at about 12:40 AM., **Ricardo PALMER (D1)** made application for admission into the United States at the San Ysidro, California Port of Entry as the driver of a Black 1989 Mercedes 300 SEL. Accompanying D1 was **Janeen OCHOA (D2)**, who was the front seat passenger and **Annabelle MORAIRA (D3),** who was the rear seat passenger. D1 presented for himself a State of California Identification Card as proof of his citizenship and identity. D1 verbally claimed that he and his passengers were United States Citizens. D1 gave a negative customs declaration, stating they were not bringing anything. D1 stated the purpose for his trip to Tijuana was to eat tacos. D1 stated he was going to San Diego, California. D1 stated the vehicle he was operating was not his own, that his vehicle was currently being repaired and that he was driving his friend's vehicle. The CBP Officer received a computer generated referral for a secondary examination. The CBP Officer obtained a second negative customs declaration from D1, stating he was not bringing anything from Mexico. As a result of the CBP Officer escorted the vehicle and occupants to secondary for further inspection.

In secondary, a cursory inspection of the vehicle led to the discovery of one female concealed behind a special built compartment, located behind the rear seats backrest. The compartment was specially modified out of the standard and preexisting fuel tank. The fuel tank was cut opened and fuel was extracted, creating a hollow space. An alternate fuel tank was customized within the preexisting tank that measured approximately 39 inches lengthwise, 5 ½ inches height and 4 inches in width. The alternate fuel tank and hollow space was layered with a thin felt material. CBP Officers assisted in extricating the female by forcefully pulling on the backrest forward. The female was determined to be an undocumented alien and a citizen of Mexico without legal documentation to enter the United States. The undocumented alien was retained as a material witness and is now identified as **Ana VEGA-Juarez (Material Witness).**

During a videotaped proceeding, D1 was advised of his Miranda Rights and elected to submit to questioning without benefit to counsel. D1 admitted he took the trolley from the Fashion Valley Transit Station to the San Ysidro Transit Station along with D2 and D3. D1 admitted they walked across the border into Mexico to a taco shop. D1 admitted he was approached by a male who proffer him a deal that secured financial gain. D1 admitted he accepted the offer from the unidentified male that involved having to drive and deliver the vehicle to a location in San Diego, California. D1 admitted he was to receive a payment of $1,200.00 USD for his deeds upon the delivery of the vehicle to the agreed location. Personal search of property lead to a discovery of one way trip Adult Fare obtained at the Fashion Valley Transit Station with an expiration time of 11:21 PM. Purchased on April 3, 2008.

On a separate videotaped interview, D2 was advised of her Miranda Rights and elected to submit to questioning without benefit to counsel. D2 offered a conflicting tale stating she and D3, who is her cousin, took the trolley from the Fashion Valley Transit Station to the San Ysidro Transit Station. D2 stated she traveled afoot to Tijuana, B.C. Mexico to meet D1, who is her boyfriend, after accepting a dinner invitation from him. D2 stated D1 was already in Mexico and did not travel with them. D2 admitted upon entering Mexico D1 picked her up and D3 in a black Mercedes. D2 stated they drove to the taco shop and ate. D2 stated D1 left the shop to exchange US currency to Mexican Pesos in order to pay for dinner. D2 stated D1 was out of sight for approximately 15 minutes. D2 admitted she was aware D1 was not the owner of the vehicle and questioned him concerning the acquired vehicle. D2 stated D1 explained he borrowed the vehicle from a friend. D2 admitted she became suspicious because there was strong odor of fuel coming from the vehicle. D2 admitted she considered exiting the vehicle upon entering the inspection lane that leads to the port of entry but decided to stay. Personal search of property lead to a discovery of one way trip Adult Fare obtained at the Fashion Valley Transit Station with an expiration time of 11:21 PM. Purchased on April 3, 2008. D2 stated she purchased two tickets, one for herself and one for D1.

On a separate videotaped interview, D3 was advised of her Miranda Rights and elected to submit to questioning without benefit to counsel. D3 offered a conflicting tale, stating she and D2 took the trolley from the Fashion Valley Transit Station to the San Ysidro Transit Station. D3 stated she traveled afoot to Tijuana, B.C. Mexico to accompany D2 to meet D1 for a dinner invitation made by D1. D3 stated D1 was already in Mexico and did not travel with them. D3 admitted upon entering Mexico D1 picked them up in a four door green vehicle that she described as being in poor condition. D3 stated she did not trust D1 but entered the vehicle anyway. D3 stated they drove to the taco shop and ate. D3 stated D1 left the shop to exchange US currency to Mexican Pesos in order to pay for dinner. D3 stated D1 was out of sight for approximately 20 minutes. D3 stated when D3 returned, he was now driving the black Mercedes. D3 admitted she became suspicious because D1 is always in possession of different vehicles. D3 admitted she considered exiting the vehicle upon entering the inspection lane that leads to the port of entry and try to convince her cousin to exit the vehicle with her and walk to the United States afoot rather than travel in the vehicle with D1. D3 admitted she changed her mind after being convinced by D2 to stay. Personal search of property lead to a discovery of one way trip Adult Fare obtained at the Fashion Valley Transit Station with an expiration time of 11:21 PM. D3 stated she purchased all their tickets and D2 only contribute .25 cents towards the fare payment.

On a separate videotaped interview, Material Witness admitted she is a citizen of Mexico without legal documentation or legal entailments to enter into United States. Material Witness stated she made smuggling arrangements with an unidentified male and agreed to pay a fee of $4,500.00 USD to be smuggled into the United States. Material Witness admitted she was unable to extricate herself out of the compartment. Material Witness admitted he was going to Los Angeles, California to seek residency and employment.

Executed on this **4th** day of **April 2008** at **1500**

Elizabeth Rangel-Machuca / CBP Enforcement Officer

On the basis of the facts presented in the Probable Cause Statement consisting of (2) page(s), I find probable cause to believe that the defendant named therein committed the offense on April 4, 2008 in violation of Title 8, United States Code, Section 1324.

United States Magistrate Judge — 4-5-08 @ 11:05 a.m. DATE / TIME