KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR1193-DMS |
| Plaintiff, | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | **(1) TO COMPEL SPECIFIC DISCOVERY** |
| ANNABELLA MORAIRA (3) | **(2) FOR LEAVE TO FILE FURTHER MOTIONS** |
| Defendant. | |
| | Date: May 23, 2008<br>Time: 11:00 a.m.<br>Court: The Hon. Dana M. Sabraw |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motions to Compel Specific Discovery and For Leave to File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

/ /

/ /

/ /

I

**STATEMENT OF THE CASE**

**A. INDICTMENT**

On April 16, 2008, a grand jury handed up a two count indictment charging the defendants, Ricardo Palmer, Janeen Ochoa, and Annabelle Moraira, with one count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). On April 17, 2008, the defendants were arraigned on the indictment and all entered not guilty pleas before Magistrate Judge Ruben B. Brooks.

On June 25, 2008, a grand jury handed up a superseding indictment that additionally charged defendant Palmer with four additional counts of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; four additional counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II); and one Special Allegation that the defendant committed offenses while on pre-trial release for the original indictment as charged in this case. The indictment also charged defendant Moraira with one additional count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one additional count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Defendant Moraira has not yet been arraigned on the superseding indictment.

On June 18, 2008, defendant Moraira filed motions to (1) compel discovery; and (2) for leave to file further motions with respect to the May 18, 2007 incident for which the defendant has been indicted.

/ /

/ /

/ /

/ /

## II

## STATEMENT OF FACTS

### A. May 18, 2007 Event

#### 1. Pre-Primary

On May 18, 2007 at approximately 7:15 pm, defendant Annabelle Moraira attempted to enter the United States as the driver of a white 2005 Chevrolet Malibu bearing California license plate 5KQB307. In addition to the defendant, defendant Moraira's infant child was a passenger in the backseat of the vehicle. During pre-primary inspection, a human detector dog alerted to defendant Moraira's vehicle. Thereafter, Customs and Border Protection (CBP) Officer Adrienne Inouye approached defendant Moraira's vehicle and asked the defendant for identification. Defendant Moraira provided her military identification, and stated that she was going to, "Coronado, my home." When Inspector Inouye asked defendant Moraira to whom the vehicle belonged, defendant Moraira stated that the car belonged to her husband. She also stated that she had gone to Mexico to visit her aunt since 1:00 pm and that she had also bought tacos. Finally, defendant Moraira also provided two negative customs declarations. While Inspector Inouye was speaking with defendant Moraira, CBP Officer Rick Gaytan looked under defendant Moraira's vehicle and observed that the gas tank tapped solid. He also observed that there was insulation foam padding between the gas tank and the vehicle's frame. Thereafter, defendant Moraira and her vehicle were referred to secondary inspection.

#### 2. Secondary Inspection

During secondary inspection, defendant Moraira's infant daughter was removed from the backseat of the vehicle. Thereafter, CBP Officer Moore removed the bottom of the backseat, and saw Millen Montes de Oca-Islas concealed in a non-factory compartment in between the rear seat of the vehicle and the gas tank. He further observed that her legs were hidden under the bottom of the back seat in the gas tank area, and her upper body was behind the back of the backseat in a carpeted plywood compartment. He further observed that a replacement gas tank had been placed in the right front corner of the vehicle. Millen Montes de Oca-Islas was thereafter removed from the non-factory compartment in the vehicle.

While secondary inspection of defendant Moraira's vehicle was occurring, defendant Moraira was escorted to a security office and a pat down search which resulted in the recovery of $126.00 was conducted. Thereafter, defendant Moraira was placed under arrest.

**3. Defendant's Post Arrest Statements**

On May 19, 2007 at approximately 1:04 am, CBP Officer Thomas Woodington advised defendant Moraira of her Miranda rights while CBP Officer David Perez served as a witness. Defendant Moraira agreed to waive her Miranda rights, and made the following statement: Defendant Moraira stated that she was introduced to a smuggler named Surdo by her friend Priscilla. Defendant Moraira took the Chevrolet Malibu to a parking lot in Tijuana earlier in the week and met Surdo. Surdo offered her $1000.00 to smuggle an alien into the United States. Defendant Moraira left her car with Surdo, and returned on May 18th to pick up the vehicle. She never saw the concealed alien, but did ask the alien if she was okay while the alien was concealed in the compartment. Surdo also showed defendant Moraira where the alternate fuel source was located under the hood of the car. She also received a piece of a paper with a telephone number that she was to call upon crossing the border at which point she would be told where to deliver the vehicle and where she was to be paid. She also stated that the owner of the vehicle was her husband, Andre Moraira. She further stated that she was smuggling an alien because her husband did not give her enough money, and that this was the first time she had attempted to smuggle an alien.

**4. Alien in Vehicle**

Millen Montes de Oca-Islas was granted a voluntary return back to Mexico.

**III**

**MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE**

To date, the Government has provided the defendants with 377 pages of discovery to the defendant. In addition to the 377 pages of discovery, the United States has also provided a DVD to the defendant which contains all of their statements, as well as a copy of the statement provided by the material witness on the day that the defendants were arrested.

With respect to the defendant's discovery motions, the Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the Defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(1) Defendants' Statements** – The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to the defendant the substance of the defendant's oral statements and defendants' written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to Defendant.

**(2) Defendants' Prior Record** – The Government has provided the defendant with a copy of their known prior criminal record and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting the defendant's prior criminal record, the Government will provide those to the defendant.

**(3) Tangible Objects** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing the defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is

either material to the preparation of the defendant's defenses, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendants. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(4) Expert Witnesses** – The Government will comply with Rule 16(a)(1)(G) and provide the defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

**(5) Brady Material** – The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to the defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendants from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendants already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or

control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001). Brady does not require the United States "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply the defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(6) Arrest Reports, Notes, and Dispatch Tapes** – The Government has provided the defendants with all known reports related to the defendant's arrests in this case. The Government is not aware of the existence of any dispatch tapes relevant to this case. The Government will continue to comply with its obligation to provide to the defendants all reports subject to Rule 16.

The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). In fact, the Government has provided the defendant with the agents' rough notes that the Assistant U.S. Attorney has at this time. We will continue to disclose these rough notes should additional notes exist. However, the Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to the defendants that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to the defendants. Moreover, the United States objects to the defendant's blanket request for sanctions in the form of exclusion of testimony should the rough notes be destroyed. Should such a situation exist, the United States will alert the defendant and the Court, and the matter can be handled at that time.

**(7) Evidence Seized** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing the defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is

either material to the preparation of the defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendant.

**(8)** **<u>404(b) Evidence</u>** – The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." <u>See</u> <u>United States v. Soliman</u>, 812 F.2d 277, 279 (9th Cir. 1987).

**(9)** **<u>Impeachment Evidence</u>** – As previously discussed, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

**(10)** **<u>Jencks Act Material</u>** – Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the defendants any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (<u>citing</u> <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)).

**(11)** **<u>Giglio Information and Agreements Between the Government and Witnesses</u>**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under <u>Brady</u> and <u>Giglio</u>. <u>See</u> <u>United States v. Kojayan</u>, 8 F.3d 1315,

1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). As stated above, the Government will provide any Giglio information in connection with this case no later than two weeks prior to trial.

**(12) Witness Statements –** The Government is aware of its obligation to provide witness statements to the defendants where relevant, and will do so at the appropriate time.

**(13) Statements of Individuals Who Will Not be a Witness**– The Government objects to the defendants' requests for all statements made by individuals who may have information relevant to the case who the government does not intend to call as a witness. The Government is not responsible for all possible information and evidence regarding any speculative defense claimed by the defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(14) Informants and Cooperating Witnesses** – At this time, the Government is unaware of a confidential source or informant involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). Should the Government become aware of an information or confidential source being involved in this case, we will make it known to the defendants.

**(15) Bias by Informants or Cooperating Witnesses** – As discussed above, the Government is unaware of any informants or cooperating witnesses in this case.

**(16) Evidence of Bias or Motive to Lie** – The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

**(17) Impeachment Evidence** – As previously discussed, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach

Government witnesses.

**(18) Evidence of Criminal Investigation of Any Government Witness** – As noted above, the Government objects to providing any evidence that a prospective witness is under criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the Government intends to call in its case-in-chief.

**(19) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling** – The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

**(20) Name of Witnesses Favorable to the Defendants** – The Government is not aware of the names of any witnesses favorable to the defendants' case. If the Government discovers any witnesses favorable to the defendants, the names of such witnesses will be promptly provided.

**(21) Jencks Act Material** – Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the defendants any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

**(22) Giglio Information and Agreements Between the Government and Witnesses** An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). As stated above, the Government will provide any Giglio information in connection with this case no later than two weeks prior to trial.

**(23) Agreements Between the Government and Witnesses** – As noted above, Government will provide any information, should there be any, no later than two weeks prior to trial.

**(24) Henthorn Material** – The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(25) Defendant's Request for Government Forms Signed by the Defendant** –The United States has sought to provide the defendant with a copy of all of the forms that the defendant signed in connection with this case. However, not all of these forms are discoverable. As such, the United States is under no duty to disclose all such forms unless they are otherwise discoverable. As such, the United States objects to the granting of any such request.

**(26) Copies of Recordings Taken of the Defendant and any Material Witness**– The United States has already informed defense counsel that there are no recordings of the defendant or material witness for the May 18, 2007 incident because while the case was initially accepted for prosecution, the defendant was ultimately not prosecuted because of her medical condition. As

such, these recordings have been destroyed.

**(27) Residual Request** – The Government has already complied with the defendants' residual request for prompt compliance with the defendants' discovery requests.

**IV**

**MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**V**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**(1) All Evidence That The Defendant Intends To Introduce In HER Cases-In-Chief**

Since the Government will honor the defendant's requests for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), requests that the defendants permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intend to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of the defendants, which they intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom the defendants intend to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**(2) Reciprocal Jencks – Statements By Defense Witnesses (Other Than The Defendants)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by the defendant. The

time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that the defendants be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

## VI

## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny the defendants' motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: June 30, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Caroline P. Han
CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANNABELLA MORAIRA (3),<br>Defendants. | Criminal Case No. 08CR1193-DMS<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTIONS FOR DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michael Messina
*Attorneys for the defendant*

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2008.

/s/ *Caroline P. Han*

CAROLINE P. HAN