KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR1193-DMS |
| Plaintiff, | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | **(1) TO SEVER DEFENDANTS** |
| ANNABELLA MORAIRA (3) | |
| Defendant. | Date: July 25, 2008<br>Time: 11:00 a.m.<br>Court: The Hon. Dana M. Sabraw |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motion to Sever Defendant. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

/ /

/ /

/ /

/ /

/ /

# I

## STATEMENT OF THE CASE

### A. INDICTMENT

On April 16, 2008, a grand jury handed up a two count indictment charging the defendants, Ricardo Palmer, Janeen Ochoa, and Annabelle Moraira, with one count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). On April 17, 2008, the defendants were arraigned on the indictment and all entered not guilty pleas before Magistrate Judge Ruben B. Brooks.

On June 25, 2008, a grand jury handed up a superseding indictment that additionally charged defendant Palmer with four additional counts of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; four additional counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II); and one Special Allegation that the defendant committed offenses while on pre-trial release for the original indictment as charged in this case. The indictment also charged defendant Moraira with one additional count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one additional count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Defendant Moraira has not yet been arraigned on the superseding indictment.

On June 18, 2008, defendant Moraira filed motions to (1) compel discovery; and (2) for leave to file further motions with respect to the May 18, 2007 incident for which the defendant has been indicted. On June 30, 2008, the United States filed a response to defendant's above described motions.

/ /

/ /

/ /

## II

## STATEMENT OF FACTS

### A. May 18, 2007 Event

#### 1. Pre-Primary

On May 18, 2007 at approximately 7:15 pm, defendant Annabelle Moraira attempted to enter the United States as the driver of a white 2005 Chevrolet Malibu bearing California license plate 5KQB307. In addition to the defendant, defendant Moraira's infant child was a passenger in the backseat of the vehicle. During pre-primary inspection, a human detector dog alerted to defendant Moraira's vehicle. Thereafter, Customs and Border Protection (CBP) Officer Adrienne Inouye approached defendant Moraira's vehicle and asked the defendant for identification. Defendant Moraira provided her military identification, and stated that she was going to, "Coronado, my home." When Inspector Inouye asked defendant Moraira to whom the vehicle belonged, defendant Moraira stated that the car belonged to her husband. She also stated that she had gone to Mexico to visit her aunt since 1:00 pm and that she had also bought tacos. Finally, defendant Moraira also provided two negative customs declarations. While Inspector Inouye was speaking with defendant Moraira, CBP Officer Rick Gaytan looked under defendant Moraira's vehicle and observed that the gas tank tapped solid. He also observed that there was insulation foam padding between the gas tank and the vehicle's frame. Thereafter, defendant Moraira and her vehicle were referred to secondary inspection.

#### 2. Secondary Inspection

During secondary inspection, defendant Moraira's infant daughter was removed from the backseat of the vehicle. Thereafter, CBP Officer Moore removed the bottom of the backseat, and saw Millen Montes de Oca-Islas concealed in a non-factory compartment in between the rear seat of the vehicle and the gas tank. He further observed that her legs were hidden under the bottom of the back seat in the gas tank area, and her upper body was behind the back of the backseat in a carpeted plywood compartment. He further observed that a replacement gas tank had been placed in the right front corner of the vehicle. Millen Montes de Oca-Islas was thereafter removed from the non-factory compartment in the vehicle.

While secondary inspection of defendant Moraira's vehicle was occurring, defendant Moraira was escorted to a security office and a pat down search which resulted in the recovery of $126.00 was conducted. Thereafter, defendant Moraira was placed under arrest.

**3. Defendant's Post Arrest Statements**

On May 19, 2007 at approximately 1:04 am, CBP Officer Thomas Woodington advised defendant Moraira of her Miranda rights while CBP Officer David Perez served as a witness. Defendant Moraira agreed to waive her Miranda rights, and made the following statement: Defendant Moraira stated that she was introduced to a smuggler named Surdo by her friend Priscilla. Defendant Moraira took the Chevrolet Malibu to a parking lot in Tijuana earlier in the week and met Surdo. Surdo offered her $1000.00 to smuggle an alien into the United States. Defendant Moraira left her car with Surdo, and returned on May 18th to pick up the vehicle. She never saw the concealed alien, but did ask the alien if she was okay while the alien was concealed in the compartment. Surdo also showed defendant Moraira where the alternate fuel source was located under the hood of the car. She also received a piece of a paper with a telephone number that she was to call upon crossing the border at which point she would be told where to deliver the vehicle and where she was to be paid. She also stated that the owner of the vehicle was her husband, Andre Moraira. She further stated that she was smuggling an alien because her husband did not give her enough money, and that this was the first time she had attempted to smuggle an alien.

**4. Alien in Vehicle**

Millen Montes de Oca-Islas was granted a voluntary return back to Mexico.

**5. Initial Case Disposition**

While defendant's case was initially accepted for prosecution in that the Customs and Border Protection Enforcement Team processed the case for prosecution, the defendant's case was ultimately declined for prosecution because she had medical needs that could not be met were she to remain in custody pending prosecution.

**B. April 4, 2008 Event**

**1. Primary Inspection**

On April 4, 2008 at approximately 12:40 am, defendant Robert Palmer attempted to enter the United States as the driver of a black 1989 Mercedes 300 SEL vehicle with California license plate XXXXI. Defendant Janeen Ochoa was the front passenger and Annabelle Moraira was a passenger in the backseat of the vehicle. Defendant Palmer provided identification for himself and his co-defendants in the form of California identification cards. In addition, defendant Palmer also provided a negative customs declaration to CBP Officer Eric Velazquez during primary inspection. Defendant Palmer stated that he and his passengers had been eating tacos in Tijuana. He also stated that he was going to San Diego, and that his friend owned the car. He further stated that he was driving the car because his own car needed repair. The defendant and the vehicle were all referred to secondary inspection based upon a computer generated referral. Defendant Palmer again provided a second negative customs declaration.

**2. Secondary Inspection**

During secondary inspection, CBP Officer Velazquez smelled a strong odor of gasoline in the vehicle. After further inspection, they found one female alien, later identified as material witness Ana Vega-Juarez, concealed in a non-factory compartment behind the rear seat of the vehicle. The compartment had been built in the space that would have accommodated the vehicle's gas tank and an alternate fuel source had been created in the vehicle. The material witness could not extricate herself from the vehicle, and CBP officers helped her get out of the vehicle. Thereafter, the defendant, his co-defendants, and the material witness were all taken into custody.

**3. Defendant Palmer's Post Arrest Statements**

On April 4, 2008 at approximately 4:30 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Palmer of his Miranda rights and he agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Palmer stated that he took the trolley from Fashion Valley to San Ysidro. While he was eating in Mexico, a man had approached him and offered him $1,200.00 to drive a car to a location in San Diego. However, the

defendant denied knowledge that the material witness was concealed within the vehicle. He also admitted to having been previously arrested on February 28, 2008 alien smuggling when he was apprehended driving a vehicle in which there were ten illegal aliens and a footguide concealing themselves in the back of the vehicle.

**4. Defendant Ochoa's Post Arrest Statements**

On April 4, 2008 at approximately 5:00 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Ochoa of her Miranda rights and she agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Ochoa stated that she and defendant Moraira had taken the trolley from Fashion Valley to Tijuana where defendant Palmer, her boyfriend, picked them up in a black Mercedes. The three then went to a taco shop to eat during which defendant Palmer left for a period of time to get change to pay for dinner. She further stated that she did smell the gasoline in the vehicle, and that she considered exiting the car before it got to the port of entry, but that she decided to stay. Defendant Ochoa also stated that she asked defendant Palmer about the ownership of the vehicle, and that defendant Palmer told her that the vehicle belonged to his friend. Lastly, she stated that she had purchased the trolley tickets for the three of them.

**5. Defendant Moraira's Post Arrest Statements**

On April 4, 2008 at approximately 5:35 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Moraira of her Miranda rights and she agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Moraira stated that she and defendant Ochoa had taken the trolley together from Fashion Valley to Tijuana where defendant Palmer picked them up in a green four door vehicle that was not the vehicle in which the group attempted to cross into the United States. Thereafter, they went to eat tacos, and defendant Palmer was gone for approximately twenty minutes during the meal. When he returned, he was driving the black Mercedes in which the group attempted to cross into the United States. She further stated that she was suspicious because defendant Palmer always has different cars and that she considered exiting the vehicle before it crossed the border, but decided to stay after her cousin convinced her to stay in the vehicle. Defendant Moraira also admitted that she had been apprehended in the past

for attempting to smuggle an alien in a gas tank compartment into the United States in her own vehicle.

**6. Defendant Moraira's MCC phone calls**

While she was in custody, defendant Moraira made several phone calls, copies of which have been provided to defendant Moraira and her co-defendants, to her husband, Andre Moraira On April 8, 2008, "We told him [Palmer] to let us out of the car. He said he had passed it, so we couldn't get out anymore, so we were fucked." Later on that same day, her husband told her that law enforcement knew that the defendants had all come from the same place and were all going to the same place.

On April 10, 2008, she also told her husband in substance, "If [Palmer] had never said what he said, we would have never gotten in the car."

On April 16, 2008, her husband told her in substance, "No way you should have been doing that." She replied in substance, "I shouldn't have gotten caught."

**7. Material Witness Statements**

Ana Vega-Juarez stated that she was a Mexican citizen, and had never applied for or had been granted immigration benefits which would allow her to enter or reside in the United States. She made arrangements with a male over the telephone to be smuggled into the United States, and was to pay $4,500.00 to be smuggled into the United States. She could not identify any of the defendants.

**III**

**MOTION TO SEVER DEFENDANT**

Defendant moves the Court to sever defendants for trial based upon potential prejudice and as a result of the defendant's medical condition. This motion should be denied.

Federal Rule of Criminal Procedure 8(b) specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses.

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense of offenses. Such

> defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

The granting or denial of a motion for severance is governed by Federal Rule of Criminal Procedure 14. Rule 14 provides in pertinent part:

> If it appears that a defendant or the Government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court many order an election or separate trials of counts grant a severance of defendants or provide whatever other relief justice requires.

In other words, although joinder is generally favorable because it promotes efficiency, see United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991), Rule 14 provides that the trials may be severed when it is apparent that a joint trial would cause prejudice. The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 536 (1993).

**a. Exculpatory testimony**

Defendant has requested severance, first, on the basis that the codefendant's testimony would exculpate her. In considering defendant's claim that the codefendant will provide exculpatory testimony, a district court must weigh a number of factors, among them, "the good faith of the defendant's intent to have a codefendant testify, the possible weight and credibility of the predicted testimony, the probability that such testimony will materialize, [and] the economy of a joint trial." United States v. Mariscal, 939 F.2d 884 (9th Cir. 1991). This list is not exclusive. Id.

To meet the requirements of United States v. Vigil, 561 F.2d 1316 (9th Cir. 1977), the defendant must show that he would call the codefendant at his severed trial; that the codefendant would in fact testify for him and that the codefendant's testimony would be favorable to him. The Court in Mariscal held that a moving defendant must show more than that the offered testimony would benefit him; he must show that the codefendant's testimony is "substantially exculpatory" in order to succeed. Id. at 9293. In that case, the Ninth Circuit determined that the district court did not abuse its discretion in denying Mariscal's motion to

sever because he did not present an affidavit of co-defendant swearing that he would testify at a separate trial. See also United States v. Olano, 62 F.3d 1180 (9th Cir. 1995)(no evidence to support the claim that one of the codefendants would have testified on defendant's behalf).

Applying the analysis here, defendant Moraira asserts in her motion that defendant Palmer has “indicated a willingness to exonerate” defendant Moraira. However, a willingness is insufficient as a basis to grant the defendant’s motion and defendant Palmer’s intent is less than clear. In defendant Palmer’s post-arrest statement which has been provided to the defendant, he discussed his participation as discussed above, but denied knowledge of the material witness being in the vehicle. He did not implicate defendant Moraira, but he certainly did not exculpate her either. Defendant Moraira may be alluding to the fact that during plea negotiations, defendant Palmer’s attorney has represented that defendant Palmer would be willing to exonerate defendants Moraira and Ochoa as part of any plea he would enter. However, that occurred shortly after the defendants were arrested and based on the evidence available to the United States, the United States does not believe that a truthful factual basis exists to support that contention. Moreover, the United States has provided documentation of defendant Moraira’s phone calls and her May 2007 arrest to defendant Palmer. Faced with that, it is less than clear that defendant Palmer would actually testify and exonerate defendant Moraira were her trial to be severed from her co-defendants’ trials. In addition, defendant Palmer has been re-arrested and indicted for two additional incidents since his April 2008 arrest, again making his willingness to testify and exonerate defendant Moraira unclear. Finally, the defendant lacks any affidavit from defendant Palmer stating that he will in fact do so. As such, the defendant’s motion should be denied.

The Mariscal court also found that the district court must also consider the exculpatory nature effect of the desired testimony -- in other words, the degree which the asserted codefendant’s testimony is exculpatory. Mariscal at 886. More specifically, the court found that the defendant “must show that the co-defendant’s testimony is ‘substantially exculpatory’ in order to succeed. Id. In this case, defendant Moraira has not been able to demonstrate what

defendant Palmer would say were he to testify at her separate trial, nor that it would be substantially exculpatory.

**c. Defendant's Medical Condition**

The United States is sympathetic to the defendant's past and current medical conditions. From defendant Moraira's MCC phone calls, it is our understanding that defendant Moraira had just become pregnant when she arrested on April 4, 2008. As such, she would likely not have her child until the end of the year or the beginning of 2009. As such, the delay that defendant Moraira seeks is quite lengthy in light of the fact that the trial is currently scheduled for August 18, 2008. Moreover, because this is one of the bases of her motion to sever, the United States requests that the Court require the defendant to provide additional documentation regarding her medical condition prior to considering this factor.

**d. Guilt by association**

Finally, defendant Moraira has stated that because the superseding indictment does not pertain to her co-defendants, and trying her under the superseding indictment as it relates to the May 18, 2007 incident would "be highly prejudicial and far outweigh any probative value that could guarantee a fair trial." When defendant Moraira filed her motion to sever, she had not yet been arraigned on the superseding indictment and perhaps did not anticipate that there would be new charges in the superseding indictment that would apply to her co-defendants. As is now evident, defendant Palmer is also charged with two additional events in the superseding indictment. As such, it remains unclear whom defendant Moraira believes would face prejudice as a result of the defendants being tried together for both the same and separate events because defendants Moraira and Palmer are in the same position to the extent that they are both charged with additional separate events.

In any event, the anticipation of a "spill-over effect," that is, that a jury may fail to compartmentalize the evidence as it relates to one defendant versus another, does not compel a severance. United States v. McDonald, 576 F.2d 1350, 1355-56 (9th Cir. 1978). "The mere fact that there may be more incriminating evidence against one codefendant than another does not provide a sufficient justification for separate trials." United States v. Polizzi, 801 F.2d

1543, 1554 (9th Cir. 1986); see also United States v. Hernandez, 952 F.2d 1110 (9th Cir. 1991) (rejecting the defendant's argument that the jury must have had difficulty separating the evidence against co-defendant because of his "familial association").

Furthermore, a defendant seeking severance based on the "spill-over effect" of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge. See Zafiro v. United States, 506 U.S. 534 (1993) (stating that the risk of prejudice posed by joint trials can be cured by proper jury instructions); United States v. Nelson, 137 F.3d 1094 (9th Cir. 1998) (holding that no severance was necessary in robbery case where judge gave limiting instructions); United States v. Joetzki, 952 F.2d 1090 (9th Cir. 1991) (citing United States v. Candoli, 870 F.2d 496, 510 (5th Cir. 1989)).

Here, Elias fails to state any basis why the jury should not be able to compartmentalize the evidence or why a limiting instruction will be insufficient. The jury should have no problems with compartmentalizing the evidence against Elias. Accordingly, Elias has failed to carry his burden under these standards and his motion should be denied. See also United States v. Angwin, 271 F.3d 786, 796-98 (9th Cir. 2001) (denying severance in an alien smuggling prosecution).

## IV

## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny the defendant's motion.

DATED: July 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Caroline P. Han*
CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ANNABELLA MORAIRA (3), Defendant. | ) ) ) ) ) ) ) ) ) ) | Criminal Case No. 08CR1193-DMS<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO SEVER** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michael Messina
*Attorney for the defendant*

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

/s/ Caroline P. Han

CAROLINE P. HAN