KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANNABELLA MORAIRA (3)<br><br>Defendant. | Criminal Case No. 08CR1193-DMS<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION:**<br><br>**(1) TO DISMISS COUNTS ONE AND TWO**<br><br>Date: July 25, 2008<br>Time: 11:00 a.m.<br>Court: The Hon. Dana M. Sabraw |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motion to Dismiss Counts One and Two. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

/ /

/ /

/ /

/ /

/ /

# I

## STATEMENT OF THE CASE

### A. INDICTMENT

On April 16, 2008, a grand jury handed up a two count indictment charging the defendants, Ricardo Palmer, Janeen Ochoa, and Annabelle Moraira, with one count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). On April 17, 2008, the defendants were arraigned on the indictment and all entered not guilty pleas before Magistrate Judge Ruben B. Brooks.

On June 25, 2008, a grand jury handed up a superseding indictment that additionally charged defendant Palmer with four additional counts of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; four additional counts of Transportation of Illegal Aliens and Aiding and Abetting in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II); and one Special Allegation that the defendant committed offenses while on pre-trial release for the original indictment as charged in this case. The indictment also charged defendant Moraira with one additional count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one additional count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).

On June 18, 2008, defendant Moraira filed motions to (1) compel discovery; and (2) for leave to file further motions with respect to the May 18, 2007 incident for which the defendant has been indicted. On June 30, 2008, the United States filed a response to defendant's above described motions.

/ /

/ /

/ /

## II

## STATEMENT OF FACTS

### A. May 18, 2007 Event

#### 1. Pre-Primary

On May 18, 2007 at approximately 7:15 pm, defendant Annabelle Moraira attempted to enter the United States as the driver of a white 2005 Chevrolet Malibu bearing California license plate 5KQB307. In addition to the defendant, defendant Moraira's infant child was a passenger in the backseat of the vehicle. During pre-primary inspection, a human detector dog alerted to defendant Moraira's vehicle. Thereafter, Customs and Border Protection (CBP) Officer Adrienne Inouye approached defendant Moraira's vehicle and asked the defendant for identification. Defendant Moraira provided her military identification, and stated that she was going to, "Coronado, my home." When Inspector Inouye asked defendant Moraira to whom the vehicle belonged, defendant Moraira stated that the car belonged to her husband. She also stated that she had gone to Mexico to visit her aunt since 1:00 pm and that she had also bought tacos. Finally, defendant Moraira also provided two negative customs declarations. While Inspector Inouye was speaking with defendant Moraira, CBP Officer Rick Gaytan looked under defendant Moraira's vehicle and observed that the gas tank tapped solid. He also observed that there was insulation foam padding between the gas tank and the vehicle's frame. Thereafter, defendant Moraira and her vehicle were referred to secondary inspection.

#### 2. Secondary Inspection

During secondary inspection, defendant Moraira's infant daughter was removed from the backseat of the vehicle. Thereafter, CBP Officer Moore removed the bottom of the backseat, and saw Millen Montes de Oca-Islas concealed in a non-factory compartment in between the rear seat of the vehicle and the gas tank. He further observed that her legs were hidden under the bottom of the back seat in the gas tank area, and her upper body was behind the back of the backseat in a carpeted plywood compartment. He further observed that a replacement gas tank had been placed in the right front corner of the vehicle. Millen Montes de Oca-Islas was thereafter removed from the non-factory compartment in the vehicle.

While secondary inspection of defendant Moraira's vehicle was occurring, defendant Moraira was escorted to a security office and a pat down search which resulted in the recovery of $126.00 was conducted. Thereafter, defendant Moraira was placed under arrest.

**3. Defendant's Post Arrest Statements**

On May 19, 2007 at approximately 1:04 am, CBP Officer Thomas Woodington advised defendant Moraira of her Miranda rights while CBP Officer David Perez served as a witness. Defendant Moraira agreed to waive her Miranda rights, and made the following statement: Defendant Moraira stated that she was introduced to a smuggler named Surdo by her friend Priscilla. Defendant Moraira took the Chevrolet Malibu to a parking lot in Tijuana earlier in the week and met Surdo. Surdo offered her $1000.00 to smuggle an alien into the United States. Defendant Moraira left her car with Surdo, and returned on May 18th to pick up the vehicle. She never saw the concealed alien, but did ask the alien if she was okay while the alien was concealed in the compartment. Surdo also showed defendant Moraira where the alternate fuel source was located under the hood of the car. She also received a piece of a paper with a telephone number that she was to call upon crossing the border at which point she would be told where to deliver the vehicle and where she was to be paid. She also stated that the owner of the vehicle was her husband, Andre Moraira. She further stated that she was smuggling an alien because her husband did not give her enough money, and that this was the first time she had attempted to smuggle an alien.

**4. Alien in Vehicle**

Millen Montes de Oca-Islas was granted a voluntary return back to Mexico.

**5. Initial Case Disposition**

While defendant's case was initially accepted for prosecution in that the Customs and Border Protection Enforcement Team processed the case for prosecution, the defendant's case was ultimately declined for prosecution because she had medical needs that could not be met were she to remain in custody pending prosecution.

**B. April 4, 2008 Event**

**1. Primary Inspection**

On April 4, 2008 at approximately 12:40 am, defendant Robert Palmer attempted to enter the United States as the driver of a black 1989 Mercedes 300 SEL vehicle with California license plate XXXXI. Defendant Janeen Ochoa was the front passenger and Annabelle Moraira was a passenger in the backseat of the vehicle. Defendant Palmer provided identification for himself and his co-defendants in the form of California identification cards. In addition, defendant Palmer also provided a negative customs declaration to CBP Officer Eric Velazquez during primary inspection. Defendant Palmer stated that he and his passengers had been eating tacos in Tijuana. He also stated that he was going to San Diego, and that his friend owned the car. He further stated that he was driving the car because his own car needed repair. The defendant and the vehicle were all referred to secondary inspection based upon a computer generated referral. Defendant Palmer again provided a second negative customs declaration.

**2. Secondary Inspection**

During secondary inspection, CBP Officer Velazquez smelled a strong odor of gasoline in the vehicle. After further inspection, they found one female alien, later identified as material witness Ana Vega-Juarez, concealed in a non-factory compartment behind the rear seat of the vehicle. The compartment had been built in the space that would have accommodated the vehicle's gas tank and an alternate fuel source had been created in the vehicle. The material witness could not extricate herself from the vehicle, and CBP officers helped her get out of the vehicle. Thereafter, the defendant, his co-defendants, and the material witness were all taken into custody.

**3. Defendant Palmer's Post Arrest Statements**

On April 4, 2008 at approximately 4:30 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Palmer of his Miranda rights and he agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Palmer stated that he took the trolley from Fashion Valley to San Ysidro. While he was eating in Mexico, a man had approached him and offered him $1,200.00 to drive a car to a location in San Diego. However, the

defendant denied knowledge that the material witness was concealed within the vehicle. He also admitted to having been previously arrested on February 28, 2008 alien smuggling when he was apprehended driving a vehicle in which there were ten illegal aliens and a footguide concealing themselves in the back of the vehicle.

**4. Defendant Ochoa's Post Arrest Statements**

On April 4, 2008 at approximately 5:00 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Ochoa of her Miranda rights and she agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Ochoa stated that she and defendant Moraira had taken the trolley from Fashion Valley to Tijuana where defendant Palmer, her boyfriend, picked them up in a black Mercedes. The three then went to a taco shop to eat during which defendant Palmer left for a period of time to get change to pay for dinner. She further stated that she did smell the gasoline in the vehicle, and that she considered exiting the car before it got to the port of entry, but that she decided to stay. Defendant Ochoa also stated that she asked defendant Palmer about the ownership of the vehicle, and that defendant Palmer told her that the vehicle belonged to his friend. Lastly, she stated that she had purchased the trolley tickets for the three of them.

**5. Defendant Moraira's Post Arrest Statements**

On April 4, 2008 at approximately 5:35 am, CBP Enforcement Officer Elizabeth Rangel-Machuca advised defendant Moraira of her Miranda rights and she agreed to waive those rights. CBP Enforcement Officer Mario Avila witnessed the event. Defendant Moraira stated that she and defendant Ochoa had taken the trolley together from Fashion Valley to Tijuana where defendant Palmer picked them up in a green four door vehicle that was not the vehicle in which the group attempted to cross into the United States. Thereafter, they went to eat tacos, and defendant Palmer was gone for approximately twenty minutes during the meal. When he returned, he was driving the black Mercedes in which the group attempted to cross into the United States. She further stated that she was suspicious because defendant Palmer always has different cars and that she considered exiting the vehicle before it crossed the border, but decided to stay after her cousin convinced her to stay in the vehicle. Defendant Moraira also admitted that she had been apprehended in the past

for attempting to smuggle an alien in a gas tank compartment into the United States in her own vehicle.

**6. Defendant Moraira's MCC phone calls**

While she was in custody, defendant Moraira made several phone calls, copies of which have been provided to defendant Moraira and her co-defendants, to her husband, Andre Moraira On April 8, 2008, "We told him [Palmer] to let us out of the car. He said he had passed it, so we couldn't get out anymore, so we were fucked." Later on that same day, her husband told her that law enforcement knew that the defendants had all come from the same place and were all going to the same place.

On April 10, 2008, she also told her husband in substance, "If [Palmer] had never said what he said, we would have never gotten in the car."

On April 16, 2008, her husband told her in substance, "No way you should have been doing that." She replied in substance, "I shouldn't have gotten caught."

**7. Material Witness Statements**

Ana Vega-Juarez stated that she was a Mexican citizen, and had never applied for or had been granted immigration benefits which would allow her to enter or reside in the United States. She made arrangements with a male over the telephone to be smuggled into the United States, and was to pay $4,500.00 to be smuggled into the United States. She could not identify any of the defendants.

**III**

**<u>MOTION TO DISMISS COUNTS ONE AND TWO</u>**

Defendant Moraira has made a motion to dismiss counts one and two of the superseding indictment charging the defendant with one count of Bringing in Illegal Aliens for Financial Gain, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 and one count of Bringing in Illegal Aliens Without Presentation, Aiding and Abetting, in violation of 18 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) for the above described May 18, 2007 event. The basis for defendant Moraira's motion is that the pre-indictment delay infringes upon her Fifth Amendment Due process rights. Such a claim is evaluated using a two prong test. The first

prong is a requirement that the defendant prove that she suffered from “actual, non-speculative prejudice from the delay. The second prong is that the delay “offends those ‘fundamental conceptions of justice which lie the base of our civil and political institutions’ when it is balanced against the prosecution’s reasons for the delay. United States v. Sherlock, 962 F.2d 1349, 1353-54 (9th Cir. 1989).

The defendant contends that the actual prejudice she incurred as a result of not being prosecuted for the May 2007 event when she initially committed the offense is based in her Confrontation Clause based right to confront the testimonial evidence admitted against her. That is, she argues that “testimonial evidence” as discussed in the case of United States v. Crawford, 541 U.S. 36 (2004), will be admitted against her. Presumably defendant Moraira is referring to Millen Montes de Oca-Islas’ statements upon being intercepted at the port of entry. However, the defendant’s motion actually indicates that defendant Moraira is actually prejudiced by “reference to” the alien. Clearly, defendant Moraira would not be prejudiced within the meaning of Sherlock by evidence that defendant Moraira was driving a vehicle at the port of entry, and that a person was found inside of a non-factory gas tank compartment in the vehicle. While the evidence might prejudice her to the extent that it goes to proving the elements of the crimes for which she is charged, defendant Moraira cannot surely claim the kind of prejudice contemplated in Sherlock. In Sherlock, the pre-indictment delay had led to victims’ memory lapses and to the loss of a rape kit. In this case, the loss comes in the form of the testimony of an alien who by virtue of her interview when she was apprehended, would corroborate both defendant Moraira’s admissions and the United States’ witness’ observations. As such, the prejudice is not to the defendant in the least.

While defendant Moraira claims that the alien’s inability to identify Moraira are critical to her defense, that too is not clear. First, identity is not at issue in this case. In fact, responding CBP inspectors will testify that they observed defendant Moraira driving a vehicle, and later found a person in the non-factory gas tank compartment in that very same vehicle. The outstanding issues are indeed knowledge and whether the defendant acted for financial gain. Clearly, the United States can prove the defendant’s knowledge and financial gain based upon

other existing evidence, including the manner in which the alien was concealed in the vehicle, the car being registered to defendant's husband, the modifications to the vehicle, and the defendant's full admissions in which she herself stated that she knew the alien was concealed in the vehicle and spoke to the alien to see if she was okay. Based upon all of evidence, the defendant has been unable to demonstrate that she has suffered an actual prejudice from the fact that Millen Montes de Oca-Islas was voluntarily returned to Mexico after being interviewed on May 18, 2007.

In evaluating these Due Process claims, the Court should also consider who caused the delay and the reasons for the delay. Id. at1354-55. In this case, the reason for the delay was none other than the fact that the United States chose not to prosecute a person who had immediate medical needs which had to be considered in light of the available government personnel to monitor the defendant while she was in custody with these medical needs. While the defendant argues that the United States deliberately rejected the case for some unknown reason which would render the alien unavailable, that is clearly not the case. As such, the United States cannot be said to be culpable for the delay to the extent that both the defendant's condition and the United States' resources contributed to delay. Moreover, it is clear that the delay did not occur as a result of any sinister desire by the United States to gain advantage over the defendant. United States v. Lovasco, 431 U.S. 783, 795 (1976). For these reasons, again the defendant cannot meet the second prong that the delay offends fundamental concepts of justice. As such, the defendant's motion should be denied.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**IV**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny the defendant's motion.

DATED: July 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Caroline P. Han*
CAROLINE P. HAN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Criminal Case No. 08CR1193-DMS |
| v. | ) | CERTIFICATE OF SERVICE |
| ANNABELLA MORAIRA (3), Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michael Messina
*Attorney for the defendant*

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

/s/ *Caroline P. Han*

CAROLINE P. HAN